FILED
2025 Dec-23 PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTHONY CRAWFORD,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. 2:24-cv-1692-EGL** |
| | } | |
| **FRANK BISIGNANO,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,**[1] | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Anthony Crawford has asked the Court to review a final adverse decision of the Commissioner of Social Security. The Commissioner denied Crawford's claims for supplemental security income (SSI) based on an Administrative Law Judge's finding that Crawford was not disabled. Crawford argues that the ALJ improperly evaluated the opinions of several consultative doctors, erroneously assessed Crawford's subjective symptoms of the limiting effects of his vision impairment, and wrongly determined his residual functional capacity to work despite his

---

[1] On May 6, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Commissioner Bisignano as the defendant in this action. *See* FED. R. CIV. P. 25(d) (Although the public officer's "successor is automatically substituted as a party" when the predecessor no longer holds office, the "court may order substitution at any time ….").

impairments. After reviewing the administrative record, for the reasons discussed below, the Court affirms the decision of the Commissioner.

## ADMINISTRATIVE PROCEEDINGS

To succeed in his administrative proceedings, Crawford had to prove he was disabled. *Raper v. Comm'r, Soc. Sec.*, 89 F.4th 1261, 1273 (11th Cir. 2024). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Gaskin v. Comm'r, Soc. Sec.,* 533 F. App'x 929, 930 (11th Cir. 2013) (citing 42 U.S.C. § 423(d)(1)(A)).[2]

An ALJ follows a five-step sequential evaluation process to determine whether a claimant has proven that he is disabled. *Raper*, 89 F.4th at 1273. The ALJ must evaluate

> (1) whether the claimant engaged in substantial gainful work; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals an impairment in the Listings of Impairments; (4) whether the claimant has the residual functional capacity ("RFC") to perform [his] past relevant work; and (5) whether,

---

[2] Title II of the Social Security Act governs applications for benefits under the Social Security Administration's disability insurance program. Title XVI of the Act governs applications for SSI. "For all individuals applying for disability benefits under title II, and for adults applying under title XVI, the definition of disability is the same." Social Security Administration, *Disability Evaluation Under Social Security*, www.ssa.gov/disability/professionals/bluebook/general-info.htm.

in the light of the claimant's RFC, age, education, and work experience, other jobs exist in the national economy the claimant can perform.

*Portwood-Braun v. Comm'r, Soc. Sec.*, No. 22-11491, 2023 WL 2417856, at *1 (11th Cir. Mar. 9, 2023) (citing 20 C.F.R. § 404.1520(a)(4)); *see Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "The claimant has the burden of proof with respect to the first four steps." *Wright v. Comm'r, Soc. Sec.*, 327 F. App'x 135, 136-37 (11th Cir. 2009). "Under the fifth step, the burden shifts to the Commissioner to show that the claimant can perform other jobs that exist in the national economy." *Id*. at 137.

Crawford applied for SSI benefits in September 2021. Doc. 10-2 at 252.[3] Crawford initially alleged that his disability began in February 2020 but later amended his alleged onset date to September 17, 2021. Doc. 10-2 at 49-50, 252. The Commissioner initially denied Crawford's claim, and Crawford requested a hearing before an ALJ. Doc. 10-2 at 133-134, 155-157, 173-174. Crawford and his attorney attended a telephone hearing with an ALJ on January 3, 2024. Doc. 10-2 at 45. A vocational expert testified at the hearing, (Doc. 10-2 at 63-65), and a different vocational expert later submitted vocational interrogatories, (Doc. 10-2 at 359-362).

---

[3] Crawford also applied for disability insurance benefits, (Doc. 10-2 at 250), but dismissed that application at the administrative hearing, (Doc. 10-2 at 49-50).

The ALJ issued an unfavorable decision on May 14, 2024. Doc. 10-2 at 26-37. On October 24, 2024, the Appeals Council declined Crawford's request for review, (Doc. 10-2 at 4-7), making the Commissioner's decision final and ripe for judicial review. *See* 42 U.S.C. § 405(g).

## EVIDENCE IN THE ADMINISTRATIVE RECORD

### *Crawford's Medical Records*

To support his application, Crawford relied on medical records relating to the diagnoses and treatment of bilateral granulomatous anterior uveitis with uveitic glaucoma, right eye blindness, glaucoma of the left eye, bilateral carpal tunnel syndrome, left shoulder arthropathy, major depressive disorder, ethanol abuse, and cannabis use. The Court has reviewed Crawford's complete medical history and summarizes the following medical records because they are most relevant to this appeal.

### *Vision Impairments*

In July 2020, Crawford's suffered from recurrent bilateral granulomatous anterior uveitis and uveitic glaucoma. Doc. 10-2 at 393-394. Crawford reported stable vision in his left eye. *Id*. at 393. He could not tolerate Diamox but treated his glaucoma with Cosopt and Brimonidine eye drops. *Id*. at 393, 394. On July 16, 2020, Crawford underwent a cataract extraction with intraocular lens placement in his left eye. *Id*. at 397-402. At a September 2020 follow up, Crawford's left eye was "doing

great" after the cataract surgery, his implanted lens was "in good position," and he had full confrontational fields in both eyes. Doc. 10-2 at 410-16. Crawford's right eye was inflamed on a September 2020 visit but less inflamed on an October 2020 visit. *Id*. at 415, 422, 424.

In December 2020, Crawford's left eye lens was clear; the uncorrected distance and intermediate visual acuity in his left eye was 20/60-1, and pinhole acuity was 20/40; his confrontational visual fields in both eyes were full to finger counting; his right eye lens had extensive synechiae and a hazy, poor view; and his right eye pressure had increased to 40 from 30 a month prior. *Id*. at 381, 382, 384, 386, 436, 453. His diagnoses included ocular hypertension in this right eye and bilateral granulomatous anterior uveitis with uveitic glaucoma. *Id*. at 384-385. Crawford continued Cosopt eye drops. *Id*. at 388. Dr. Atik recommended a shunt procedure for Crawford's right eye glaucoma. *Id*. at 387, 456.

In January 2021, Crawford underwent a shunt procedure with synechiolysis for glaucoma in his right eye. *Id*. at 389-392. At post-op visits in January 2021, Crawford reported pain in his right eye, and his right eye pressure was 32. *Id*. at 460, 464, 469. Crawford's left eye lens capsule, cortex, and nucleus were clear. *Id*. at 469. In February 2021, Crawford had "nuclear sclerosis 2+" in his right eye lens and increased right eye pressure. Doc. 10-3 at 1, 15. At February and March 2021 follow-up visits, Crawford's distance and intermediate visual acuity in his left eye was

20/50-2 and 20/50. *Id.* at 8, 18. In March 2021, Crawford had full confrontational fields in his left eye, but he could not see fingers with his right eye. *Id.* at 20. In April 2021, Crawford reported no pain in his right eye but had a "hazy white cataract" and ocular hypertension in that eye. *Id.* at 30, 33.

In June and July 2021, Crawford had 20/40 distance and intermediate visual acuity and full confrontational fields in his left eye. *Id.* at 48, 49, 59, 68. The July 2021 medical notes indicate that his doctor wanted to hold off on surgery for Crawford's right eye cataract partly because he had "one good seeing eye." *Id.* at 70. At an ophthalmology visit in April 2022, Crawford complained that his eyes were "throbbing." *Id.* at 198. His uncorrected left eye distance and intermediate visual acuity was 20/100-3, but he had full confrontational fields in his left eye. *Id.* at 200, 215. To treat his glaucoma, doctors prescribed Crawford multiple eye drops to administer up to eight times a day. *Id.* at 212-213, 230.

A May 2022 treatment note indicates that Crawford's left eye lens was in "good position" but had "opacity across the lens surface." *Id.* at 234. In June and August 2022, Crawford had confrontational fields full to finger counting in both eyes. *Id.* at 244-245; Doc. 10-4 at 3. Crawford reported pain and discomfort in both eyes in November 2022 and had "abnormal field to finger counting" in his right eye. Doc. 10-4 at 52. In December 2022, Crawford reported falling five times the prior year because of his vision. *Id.* at 80. He had recurrent inflammation in his right eye

and worsening inflammation in his left eye, and his left eye pressure was "too high*."*
*Id*. at 76, 86, 88, 98.

In January 2023, Crawford's uveitis was "better," and his eye pressure was "OK." *Id*. at 127, 129. At a February 2023 follow up, his right eye pressure was better, but inflammation was worse. *Id*. at 160, 163. Crawford's eye pressure was "great" in April 2023 while taking Diamox 500 mg. Doc. 10-5 at 17. In May 2023, Crawford's best corrected distance visual acuity in his left eye was 20/40, and his best corrected reading or close work visual acuity in that eye was 20/50. Doc. 10-4 at 180. His right eye pressure was better. *Id*. at 446. His confrontational fields were full to finger counting in both eyes, and he had "some pigment" on his left eye lens. *Id*. at 187. In June 2023, Crawford underwent a shunt revision for his right eye cataract. *Id*. at 193-201. At a post-op examination, Crawford could see light in his right eye, had stable vision, and had confrontational fields full to finger counting in both eyes. *Id*. at 233, 236. Crawford's doctor restarted Cosopt eye drops because his right eye pressure was "too high." *Id*. at 431. In September 2023, Crawford's visual acuity in his right eye was better, but treatment notes indicated that he had been on medications for "quite some time without resolution of inflammation." *Id*. at 335, 338. The inflammation in both of his eyes was "improving." *Id*. at 358, 361. His vision was stable in October 2023. *Id*. at 304.

Treatment notes from December 2023 indicated that Crawford's uveitis symptoms included blurry vision, eye pain, and itchiness and that he had "received multiple rounds of steroid eye drops" and had taken various doses of oral Prednisone for years. *Id*. at 238. Crawford's visual acuity in his left eye was 20/40+3. *Id*. at 253. His confrontational field in his left eye was full to finger counting, but he could not see fingers with his right eye. *Id*. at 255.

*Depression*

In July 2021, Crawford reported that he experienced "some depression" after the death of his son. Doc. 10-3 at 151. Crawford stated that he did not have anxiety and that his "concentration is fine." *Id*. His mental status exam was normal. *Id*. at 153. Crawford was diagnosed with major depressive disorder and prescribed Cymbalta, Seroquel, and Remeron. Doc. 10-3 at 154. Crawford reported in April 2022 that his depression "began around 2020 when he lost vision in his right eye." *Id*. at 190. He indicated that he worried about "financial stressors" and "going completely blind." *Id*. Crawford rated his depression at a "5/10 at worse" and indicated that he had "more good days than bad." *Id*. at 191. His mental status exam was "[u]nremarkable." *Id*. at 193. Crawford denied difficulty concentrating in August 2022. Doc. 10-4 at 19, 21.

In October and December 2022, he reported no problems with mental functioning, and his mental status exams were normal. *Id*. at 39, 41, 111, 114.

Crawford reported moderate depression symptoms and poor concentration and focus in July 2023. *Id*. at 386. Treatment notes indicated that Crawford's caregiver reported that Crawford was compliant with his depression medications, drank alcohol until he passed out, and had been falling. Doc. 10-4 at 392.

### *Dr. Kenneth Randall Smith's Consultative Vision Examination*

At the request of the Social Security Administration, Dr. Kenneth Randall Smith examined Crawford's visual acuity in December 2020. Doc. 10-2 at 364, 367-372. Dr. Smith indicated that Crawford's distance and reading visual acuity with best correction in his right eye was "CF," or the ability to count fingers. *Id*. at 367; *see* Doc. 10-5 at 60. Crawford's best corrected distance visual acuity in his left eye was 20/50-2, and his best corrected reading or close work visual acuity was 20/125. *Id*. Dr. Smith noted that Crawford had restricted visual field and normal muscle function in both eyes. *Id*. Dr. Smith's diagnoses included bilateral chronic uveitis and glaucoma. *Id*. at 368, 370. Dr. Smith recommended that Crawford take low visual acuity precautions in the workplace. *Id*. at 368.

In May 2023, Dr. Smith conducted a second visual examination of Crawford at the Social Security Administration's request. Doc. 10-4 at 179-184. Dr. Smith noted that Crawford's best corrected distance and reading or close work visual acuity in his right eye was 20/LP. *Id.* at 180. Crawford's best corrected distance visual acuity in his left eye was 20/40, and his best corrected reading and close work visual

acuity was 20/50. *Id*. Dr. Smith noted that Crawford's right eye pressure was 58, and his left eye pressure was 34; Dr. Smith wrote that Crawford needed to follow up with his glaucoma specialist "ASAP." *Id*. at 182. Dr. Smith recommended that Crawford take low visual acuity precautions in the workplace. *Id*. at 181.

### Dr. Pauline Hightower's Mental Residual Functional Capacity Assessment

On July 11, 2022, at the request of the Social Security Administration, Dr. Hightower reviewed Crawford's medical records and evaluated his mental residual functional capacity. Doc. 10-2 at 77-78, 82-83. Dr. Hightower opined that Crawford was not significantly limited in his ability to carry out short, simple instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted; and make simple work-related decisions. *Id*. at 83. Dr. Hightower opined that Crawford had moderate limitations in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 83.

Dr. Hightower explained that Crawford could "carry out short and simple instructions and attend and concentrate for 2 hour periods on simple tasks with

10

customary breaks and rest during the regular workday" and might "miss 1-2 days a month of work due to psychiatric signs and symptoms." *Id*.

### Dr. Rachel Harvey's Consultative Visual Examination

In August 2022, at the request of the Social Security Administration, Dr. Harvey examined Crawford's visual acuity. Doc. 10-3 at 251-255. Crawford's best corrected visual acuity in his left eye was 20/40; he had color perception in his left eye but had "light perception only" in his right eye; and he had normal muscle function in both eyes. *Id*. at 252-253. Dr. Harvey indicated that Crawford's prognosis was poor for his right eye but good for his left eye with continued medical care. *Id*. at 253.

### Dr. Eric Wiener's Mental Residual Functional Capacity Assessment

On April 24, 2023, at the request of the Social Security Administration, Dr. Wiener reviewed Crawford's medical records and assessed his mental residual functional capacity. Doc. 10-2 at 100-101, 103-104. Dr. Wiener opined that Crawford had mild limitations in his ability to understand, remember, and apply information; interact with others; and adapt or manage himself. *Id*. at 100. Like Dr. Hightower, Dr. Wiener assessed that Crawford had moderate limitations in his ability to concentrate, persist, and maintain pace. *Id*. at 100. Dr. Wiener opined that Crawford did not have memory and understanding limitations and was not significantly limited in his ability to carry out short and simple instructions; perform

activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work with others without being distracted by them; and make simple work-related decisions. *Id*. at 104. Dr. Wiener agreed with Dr. Hightower that Crawford was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; and complete a workday and workweek without interruptions from psychologically based symptoms and perform a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. Wiener explained that Crawford "seemed capable of performing simple, repetitive tasks with brief lapses of focus and with low productivity demands." *Id*.

### *Crawford's Function Report*

At the request of the Social Security Administration, Crawford completed an adult function report in March 2023. Doc. 10-2 at 301-308. Crawford reported that his "very limited sight" and inability to drive limited his ability to work. *Id*. at 301, 304. He indicated that he did not prepare meals because he could not "read boxes," could not see colors, and could not differentiate money or make change. *Id*. at 303. Crawford reported that his vision impairments affected his depth perception on his right side and his ability to walk alone, climb stairs, and complete tasks. *Id*. at 306. He wrote that he could pay attention, finish what he started, follow simple written and oral instructions, and had no issues with memory or concentration. *Id*.

### *Administrative Hearing*

The ALJ held Crawford's telephone administrative hearing on January 3, 2024. Doc. 10-2 at 45. Crawford testified that he could not work "simply because of [his] eyesight." *Id*. at 50. He stated that he lost sight in his right eye and had "good days and bad days in [his] left eye." *Id*. Crawford explained that because of his vision impairments, he could not drive, bumped into things, had cloudy vision in his left eye, applied steroid drops in his left eye hourly each day, wore dark sunglasses inside and outside because of light sensitivity, watched television from two or three feet away, and needed someone with him if he went outside. *Id*. at 51-52, 58, 61. He indicated that when he went outside, his eye pressure increased, causing cloudiness and itching in his eye that sometimes took a day to resolve. *Id*. at 51, 56, 60. Crawford testified that if he did not have vision impairment, he would be working. *Id*. at 53.

Vocational expert Eric Anderson testified during Crawford's administrative hearing. *Id*. at 63. VE Anderson classified Crawford's past work as a kitchen helper as medium, unskilled work with a reasoning level of 2.[4] *Id*. In response to Crawford's

---

[4] The Department of Labor has published the Dictionary of Occupational Titles (DOT), which the Social Security Administration "frequently relies on." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). The DOT "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." *Thomas v. Berryhill*, 916 F.3d 307, 309 n.1 (4th Cir. 2019). Relevant here, the DOT provides six levels of reasoning development, with level 6 occupations requiring the highest degree of reasoning skills and level 1 the lowest. A job with a reasoning level of 2 requires "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems

attorney's hypothetical, VE Anderson testified that no jobs were available for an individual who could not avoid common workplace hazards. *Id.* at 64-65. Because the ALJ had questions regarding the extent of Crawford's vision limitations based on the consultative examinations in the record, the ALJ did not pose hypotheticals to the vocational expert at the hearing. *Id.* at 63. Instead, the ALJ consulted a vision medical expert to better understand Crawford's vision impairments.

### *Dr. Lawrence Schaffzin's Medical Interrogatories and Medical Statement*

After the administrative hearing, at the request of the ALJ, board certified ophthalmologist Dr. Schaffzin reviewed Crawford's medical records provided by the Social Security Administration and completed medical interrogatories and a medical statement on January 10, 2024. Doc. 10-5 at 47, 50-60. Citing Crawford's extensive medical records, Dr. Schaffzin found that Crawford suffered from bilateral chronic granulomatous anterior uveitis with uveitic glaucoma. *Id.* at 57, 60. Dr. Schaffzin opined that Crawford's impairments did not meet or medically equal a vision impairment described in the Listing of Impairments because his visual acuity was better than 20/200, he had full field of vision in his left eye, and his "mean deviation [was] better than -22." *Id.* at 58, 60.

---

involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (G.P.O). A reasoning level of 1 requires "commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

Dr. Schaffzin found that despite blindness in his right eye, Crawford had "minimal limitation of depth perception overall" and could "perform any task requiring fair to good depth perception." *Id.* at 59. Dr. Schaffzin assessed that Crawford had "no visual limitations" in his left eye and could avoid ordinary hazards in the workplace, read "very small" newspaper and book print, view a computer screen, "determine difference in shape and color of small objects," shop, travel without a companion for assistance, ambulate without an assistive device, climb a few steps at a reasonable pace using a handrail, and prepare simple meals and feed himself. *Id.* at 53, 55, 60. Dr. Schaffzin opined that Crawford should never climb ladders or scaffolds; occasionally could tolerate unprotected heights and moving mechanical parts; and should avoid "concentrated exposure to hazards such as heights and dangerous machinery." *Id.* at 53, 54, 59.

### *Vocational Expert Interrogatories*

The ALJ asked vocational expert Marissa Howell to review Crawford's medical record and submit interrogatory answers regarding the jobs that Crawford could perform despite his impairments. Doc. 10-2 at 358-362. VE Howell classified Crawford's past work as a dishwasher as medium exertion, unskilled work with a reasoning level of 2. *Id.* at 360. The ALJ in Interrogatory 7 asked VE Howell to assume a hypothetical individual with the same age, education, and work experience as Crawford with the following limitations:

> He can occasionally climb ramps and stairs. He can frequently balance, stoop, kneel, crouch, and crawl. He should avoid ladders, ropes, scaffolds, unprotected heights, hazardous machines, open bodies of water, and commercial driving. He can have occasional exposure to extreme temperatures, wetness, humidity, vibration, and pulmonary irritants such as fumes, odors, dusts, gasses, and poorly ventilated areas. He can frequently handle, finger, and feel. He can understand, remember, and carry out simple instructions.

*Id.* VE Howell indicated that the individual could not perform Crawford's past work but could perform light, unskilled work with a reasoning level of 2 as a garment sorter with 252,000 available jobs nationally, a ticket marker with 2,451,000 available jobs nationally, or an usher with 54,970 available jobs nationally. *Id.* at 360-61.

## ALJ DECISION

On May 14, 2024, the ALJ issued a decision that concluded that Crawford was not disabled. Doc. 10-2 at 26-37. The ALJ found that Crawford had not engaged in substantial gainful activity since his alleged onset date. *Id.* at 29.[5] The ALJ determined that Crawford suffered from the severe impairments of bilateral granulomatous anterior uveitis with uveitic glaucoma bilaterally, right eye blindness, glaucoma of the left eye, bilateral carpal tunnel syndrome, left shoulder arthropathy, major depressive disorder, ethanol abuse, and cannabis use. *Id.* Based on a review

---

[5]  The ALJ indicated that Crawford alleged disability as of his amended onset date of September 17, 2021, but stated that Crawford had not engaged in substantial gainful activity since February 17, 2020, his initial disability onset date. Doc. 10-2 at 29.

of the medical evidence, the ALJ concluded that Crawford did not have an impairment or a combination of impairments that met or medially equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Doc. 10-2 at 30.

Considering Crawford's impairments, the ALJ evaluated his residual functional capacity. *Id*. at 31-35. The ALJ determined that Crawford had the RFC to perform:

> light work ... except [h]e can occasionally climb ramps and stairs. He can frequently balance, stoop, kneel, crouch, and crawl. He should avoid ladders, ropes, scaffolds, unprotected heights, hazardous machines, open bodies of water, and commercial driving. He can have occasional exposure to extreme temperatures, wetness, humidity, vibration, and pulmonary irritants such as fumes, odors, dusts, gasses, and poorly ventilated areas. He can frequently handle, finger, and feel. He can understand, remember, and carry out simple instructions.

*Id*. at 31.

Based on this RFC and relying on VE Howell's interrogatory answers, the ALJ concluded that Crawford could not perform his past relevant work as a kitchen helper. *Id*. at 35. The ALJ also found that based on VE Howell's interrogatory answers, other jobs existed in significant numbers in the national economy that Crawford could perform, including garment sorter, ticket marker, and usher. *Id*. at 36. Accordingly, the ALJ determined that Crawford was not disabled as defined by the Social Security Act. *Id*. at 37.

## STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," a district court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r, Soc. Sec.*, 522 F. App'x 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

A district court must determine whether substantial evidence in the record supports the ALJ's factual findings. *See* 42 U.S.C. § 405(g). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. 293, 301 (2015), and *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103 (quoting *Consolidated Edison Co.*, 305 U.S. at 229). When evaluating the administrative record, a district court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (internal quotations and citations omitted). If substantial evidence supports the ALJ's factual

findings, then a district court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158-59); *see also Mitchell v. Comm'r, Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015).

With respect to an ALJ's legal conclusions, a district court must determine whether the ALJ applied the correct legal standards. *Hayes v. Comm'r, Soc. Sec.*, No. 24-11434, 2025 WL 1000862, at *6 (11th Cir. Apr. 3, 2025) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). The Commission's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Hayes*, 2025 WL 1000862, at *6 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

## DISCUSSION

Crawford contends that the ALJ made several reversible errors in finding that Crawford was not disabled. The Court is not persuaded.

### *Evaluation of Medical Opinions*

Crawford argues that the ALJ improperly evaluated the medical opinions of state agency consultants Dr. Hightower and Dr. Wiener. The Court disagrees. An ALJ must consider five factors when evaluating the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization,

and "other factors." 20 C.F.R. § 416.920c(1)-(5); *see Harner v. Social Security Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022). The most important factors are supportability and consistency, and an ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions ... in [his] determination or decision." 20 C.F.R. § 416.920c(b)(2). When considering the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). And when considering the consistency of a medical opinion, "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2).

The ALJ found Dr. Hightower's opinion "somewhat persuasive" but explained that Dr. Hightower's finding that Crawford "would have multiple absences [was] not supported by the record" because the "limited treatment records noted [in the ALJ's opinion] show[ed] no exacerbation in mental health issues that would result in absences." Doc. 10-2 at 34. The ALJ also noted that Crawford's "limited treatment notes reflect[ed] no persistent or significant limits" in concentration, persistence, or pace, and that Crawford "repeatedly exhibit[ed] normal psychiatric exams," (Doc. 10-2 at 30), including good memory and good

concentration, (Doc. 10-3 at 101, 105). The ALJ also found Dr. Wiener's opinion "somewhat persuasive" but explained that "portions of Dr. Wiener's opinion [were] offered in broad undefined terms." Doc. 10-2 at 34. The ALJ noted that Dr. Weiner did not define "brief lapses of focus, low productivity, and repetitive tasks" and that those descriptions are not defined "in resources used as a foundation for vocational expert testimony." *Id.*

In evaluating Dr. Hightower's opinion, Crawford argues that the ALJ "provided no explanation" regarding the consistency and supportability of Dr. Hightower's opinion that Crawford was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of length of rest periods. Doc. 12 at 5-6. Crawford claims the ALJ ignored these parts of Dr. Hightower's opinion. Doc. 12 at 7. The Court disagrees.

The ALJ adequately assessed Dr. Hightower's and Dr. Wiener's opinions under 20 C.F.R. § 416.920c(c)(2). Contrary to Crawford's assertion, the ALJ did not have to mention all the specific limitations discussed by Dr. Hightower and Dr. Wiener in their opinions and explain the reason for each omission to adequately assess their opinions. *See Matos v. Comm'r, Soc. Sec.*, No. 21-11764, 2022 WL

97144 *6 (11th Cir. Jan. 10, 2022) ("Although the ALJ did not specifically discuss Matos's bipolar diagnosis, the ALJ was not required to discuss every piece of evidence in evaluating Matos's claim."). The ALJ indicated that he considered the medical opinions and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c(c)(2) in reaching his RFC determination, (Doc. 10-2 at 31), and explained adequately why he found the opinions only partially persuasive.

The ALJ sufficiently explained why he did not agree fully with Dr. Hightower's opinion regarding absences and pointed to substantial evidence in the record to support that Crawford did not have significant limitations in his ability to concentrate, persist, and maintain pace. The ALJ noted Crawford's limited treatment notes showing that he had no persistent or significant issues with concentration, persistence, or maintaining pace and Crawford's self-reports that he had no memory or concentration issues and could follow simple written and oral instructions. *See* Doc. 10-2 at 30 ("The claimant reports no memory issues" and "that he can follow written and oral instructions."). The ALJ also adequately explained why he did not find totally persuasive Dr. Wiener's opined limitations that he defined in broad terms. In making this finding, this Court is mindful that it may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (internal quotations and citations omitted).

Contrary to Crawford's argument, (Doc. 12 at 8), Dr. Hightower and Dr. Wiener did not find that Crawford had *significant* limitations maintaining a regular work schedule and completing a normal workday. Dr. Hightower opined that Crawford could complete a normal workday with customary breaks and rest, and Dr. Wiener opined that Crawford had no limitation in maintaining a regular work schedule and moderate limitation in completing a normal workday. The ALJ agreed with Dr. Hightower and Dr. Wiener that Crawford had some moderate limitations in concentration, persistence, and pace and accounted for those limitations in the RFC by limiting Crawford to unskilled work and simple instructions. Doc. 10-2 at 30-31.

Based on its review of the administrative record, the Court finds that the ALJ properly evaluated Dr. Hightower's and Dr. Wiener's opinions under 20 C.F.R. § 416.920c(c)(2), and substantial evidence supports the ALJ's findings on this issue.

### Evaluation of Crawford's Subjective Symptoms

Crawford argues that the ALJ improperly evaluated his subjective symptoms regarding his visual limitations. His arguments lack merit.

"A three-part 'pain standard' applies when a claimant attempts to establish disability through [his] own testimony of pain or other subjective symptoms." *Malak v. Comm'r, Soc. Sec.*, 131 F.4th 1280, 1287 (11th Cir. 2025) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)). Under this standard, the claimant must show "(1) evidence of an underlying medical condition, and either (2) objective

medical evidence confirming the severity of the alleged [symptoms] arising from that condition, or (3) a showing that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptoms]." *Id.* (internal quotations and citations omitted).

When evidence in the record shows an impairment that reasonably could produce the claimant's subjective symptoms, the ALJ must evaluate the intensity and persistence of the symptoms to determine how those symptoms limit the claimant's ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  SSR 16-3p, 2017 WL 5180304, at *4.

In evaluating a claimant's reported symptoms, an ALJ must consider:

(i) [the claimant's] daily activities;
(ii) [t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
(iii) [p]recipitating and aggravating factors;
(iv) [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
(v) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of ... pain or other symptoms;

(vi) [a]ny measures [the claimant] use[s] or ha[s] used to relieve ... pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If an ALJ decides not to credit a claimant's subjective symptoms, "the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding." *Malak*, 131 F.4th at 1287 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).

Here, the ALJ conceded that Crawford's "medically determinable impairments could reasonably be expected to cause some symptoms and/or functional limitations" but found that Crawford's statements "concerning the intensity, persistence, and limiting effects of these symptoms [were] inconsistent with the objective medical evidence, treatment regimen and response to treatment, and daily activities." Doc. 10-2 at 32. Crawford argues that "while the ALJ's decision then provided a summary of some of the evidence," the ALJ never explained how the evidence in the record contradicted Crawford's subjective symptoms. Doc. 12 at 13. Again, the Court disagrees.

The ALJ acknowledged Crawford's subjective statements regarding his inability to work because of blindness in his right eye, blurred and cloudy vision in his left eye, light insensitivity, falls, and need to sit close to the television. Doc. 10-

2 at 31-32. To support his finding that Crawford's statements regarding the limiting effects of his symptoms were inconsistent with the objective medical evidence, the ALJ thoroughly discussed the evidence in the record, (*id.* at 32-35), and noted that "objective testing consistently showed that the claimant had 20/40 left eye vision" for "distance, reading, and close work"; "stable left eye vision"; and normal muscle function in the left eye, (*id.* at 32, 33). The ALJ pointed to Dr. Schaffzin's medical opinion based on objective testing in the record that Crawford had "no left eye visual limitations" and "minimal limits in depth perception." *Id.* at 32, 35. The ALJ noted that Dr. Schaffzin, who reviewed Crawford's extensive medical record, opined that Crawford could avoid ordinary workplace hazards, read "very small" newspaper and book print, view a computer screen, and "determine difference in color and shape in small objects." *Id.* at 34; *see* Doc. 10-5 at 50-60.

The Court agrees with the Commissioner that the Court must read the ALJ's opinion as a whole and not in isolated sentences. *See* Doc. 14 at 17 (citing *Raper*, 89 F.4th at 1275). Doing so, the Court finds that the ALJ properly evaluated Crawford's subjective symptoms, and substantial evidence supports the ALJ's finding that Crawford's statements regarding the limiting effects of his vision impairments were inconsistent with the objective evidence in the record.

*Hypothetical to the Vocational Expert and Residual Functional Capacity*

Crawford argues that the ALJ's hypothetical to the vocational expert and the ALJ's RFC determination did not account adequately for Crawford's moderate limitations in his ability to concentrate over a period of time, perform activities within a schedule, maintain regular attendance, complete a normal work day without interruptions, maintain a particular work pace over the course of a workday or workweek, and persist in work activities. Doc. 12 at 6, 16-17. Crawford contends that because the ALJ did not include in his hypothetical to the vocational expert or in the RFC determination all of Dr. Hightower's and Dr. Wiener's opined limitations, the ALJ's RFC determination is flawed and unsupported by substantial evidence. Crawford's arguments lack merit.

A claimant's RFC is the "most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, an ALJ must "consider the limiting effects of all ... impairment(s), even those that are not severe." 20 C.F.R. §§ 404.1545(e), 416.945(e). "The RFC assessment must be based on all relevant evidence in the case record," including medical history, reports of daily activities, medical source statements, and the effects of symptoms, including pain. SSR 96-8p, 1996 WL 374184 at *5 (italics in original).

For a hypothetical to a vocational expert to constitute substantial evidence to support an ALJ's RFC finding, the hypothetical must account for a claimant's

limitations in concentration, persistence, and pace. *Winschel,* 631 F.3d at 1180-81. An ALJ may do so explicitly by including those limitations in the hypothetical questions to a vocational expert or by "limiting the hypothetical to include only unskilled work" if the "medical evidence demonstrates that [the] claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace." *Id.* at 1180; *see also Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that Mijenes could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of Mijenes's functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace."). An ALJ is not required to include in the hypothetical to the vocational expert or in the RFC finding non-exertional limitations unsupported by the record. *Tackett v. Comm'r of Soc. Sec.*, No. 21-11852, 2022 WL 2314095, at *3 (11th Cir. June 28, 2022) (citing *Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

Here, the ALJ included in the hypothetical to the vocational expert and in his RFC determination the non-exertional limitation of understanding, remembering, and carrying out simple instructions. Doc. 10-2 at 359-362. That limitation in the hypothetical to the vocational expert sufficiently accounted for Crawford's moderate difficulties in concentration, persistence, and pace. The record in this case

demonstrates that Crawford could engage in simple, routine tasks or unskilled work despite his moderate limitations in concentration, persistence, and pace. Crawford reported in his adult function report that he could pay attention, finish what he started, follow simple written and oral instructions, and had no issues with memory or concentration. *Id*. at 306. Crawford repeatedly had normal psychiatric symptoms, including good memory and good concentration. Doc. 10-3 at 101, 105. Crawford testified that he could work but for his vision impairment, and he did not claim that he could not work because of his inability to concentrate, persist, or maintain pace in a work setting. Based on the entirety of Crawford's administrative record, the ALJ's limiting of Crawford to simple instructions and unskilled work sufficiently accounted for his moderate limitations in concentration, persistence, and pace.

Crawford's reliance on *Samuels v. Comm'r of Soc. Sec.*, 959 F.3d 1042 (11th Cir. 2020), is misplaced. *See* Doc. 12 at 15-16. Samuels had severe bipolar disorder, and the Commissioner's medical expert opined that Samuels was "markedly limited" in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id*. at 1047. Yet, the ALJ's hypothetical to the vocational expert did not include these marked limitations and only included that Samuels could understand, remember, and carry out short, simple work instructions and occasionally interact with the public. *Id.* The Eleventh Circuit found that these few non-exertional limitations in the hypothetical to the vocational

expert did not account for all of Samuel's marked limitations caused by the "episodic nature" of her severe bipolar disorder. *Id*. Unlike the record in *Samuels*, Crawford did not suffer from bipolar disorder and did not have marked limitations in his ability to concentrate, persist, and maintain pace. Crawford's administrate record showed that he could follow simple instructions, had no memory or concentrations issues, and could perform unskilled work despite his moderate limitations in concentration, persistence, and maintain pace.

Crawford also argues that the ALJ "erred by failing to reconcile an apparent conflict between the Dictionary of Titles (DOT) and the testimony of the vocation expert" regarding the jobs that Crawford could perform despite his impairments. Doc. 12 at 8. Based on a hypothetical to the vocational expert that included a non-exertional limitation of understanding, remembering, and carrying out simple instructions, the vocational expert found that Crawford could work at unskilled jobs with a reasoning level of 2, including as a garment sorter, ticket marker, or usher. Doc. 10-2 at 359-362.

Crawford argues that Dr. Hightower's finding that Crawford was limited to "short" and simple tasks conflicts with jobs that have a reasoning level of 2, "which requires, at a minimum, carrying out 'detailed' written and oral instructions." Doc. 12 at 9. But this argument simply repackages Crawford's earlier failed argument that the ALJ was required to accept or expressly reject each of Dr. Hightower's findings.

The ALJ did not and was not required to credit Dr. Hightower's finding that Crawford could perform only "short" tasks. Substantial evidence undercuts that opinion. Thus, the ALJ did not err when its RFC did not limit Crawford to "short" tasks, but instead limited him only to understanding, remembering, and carrying out simple instructions.

And there is no apparent conflict between an RFC that limits a claimant to the ability to understand, remember, and carry out simple instructions and jobs with a reasoning level of two. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021) ("There is not an apparent conflict here between Buckwalter's RFC, which limits her to the ability to 'understand, carry-out, and remember simple instructions,' and the identified positions with a reasoning level of two.").

Based on its evaluation of the administrate record, the Court finds that the ALJ properly evaluated Crawford's RFC, and substantial evidence, including the vocational expert's interrogatory answers, support the ALJ's RFC findings.

## CONCLUSION

The Court AFFIRMS the decision of the Commissioner.

**DONE** and **ORDERED** this 23rd day of December, 2025.

_Edmund LaCour_
_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE